FILED _____ LODGED
_____ RECEIVED _____ COPY

AUG 2 1 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1   Jason Crews
2   1515 N Gilbert Rd Ste 107-204
    Gilbert, AZ 85234
3   602-295-1875
    Jason.crews@gmail.com
4
5   *In propria persona*
6
7                   UNITED STATES DISTRICT COURT
8                    FOR THE DISTRICT ARIZONA
9                       PHOENIX DIVISION
10
11  Jason Crews,                      | Case No.:  **CV24-02129-PHX-CDB**
12              Plaintiff,            |
13  vs.                               | Complaint for Violations of:
14  Donald Hiatt                      | 1.      NEGLIGENT VIOLATIONS
15              Defendant.            | OF THE TELEPHONE CONSUMER
16                                    | PROTECTION ACT [47 U.S.C. §227 ET
17                                    | SEQ.]
18                                    | 2.      WILLFUL VIOLATIONS OF
19                                    | THE TELEPHONE CONSUMER
20                                    | PROTECTION ACT [47 U.S.C. §227 ET
21                                    | SEQ.]
22
23
24                                    | DEMAND FOR JURY TRIAL
25
26
27
28  ///

    COMPLAINT- 1

## COMPLAINT

### Preliminary Statement

1. "When it comes to robocalls, you can only call those who, like Blondie, have said, "Call me. Call me on the line." If you call people who haven't opted in, then you face liability under the Telephone Communications Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024).

2. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The Defendant in this action Donald Hiatt orchestrated placing at least one illegal telemarketing call using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List utilizing a pre-recorded voice.

4. Plaintiff never consented to receive such messages.

### Parties

5. Plaintiff Jason Crews ("Crews" and "Plaintiff") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

6. Defendant Donald Hiatt ("Hiatt"), a resident of Maricopa County, AZ directed, authorized, and participated in the illegal calls complained of herein.

### Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated messages to the Plaintiff were placed into this District.

///

COMPLAINT- 2

1

<u>Venue</u>

2    9.    The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part

3   of the events or omissions giving rise to the claim occurred in this District, as the calls to

4   Plaintiff were placed into this District.

5

<u>The Telephone Consumer Protection Act</u>

6    8.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the

7   automated calling industry. In so doing, Congress recognized that "[u]nrestricted

8   telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer

9   Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10   9.    Under the TCPA, candidates such as Hiatt may be personally liable for the acts

11   alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

12

13   [T]he act, omission, or failure of any officer, agent, or other person acting for or
     employed by any common carrier or user, acting within the scope of his

14   employment, Case 2:22-cv-02724-ER Document 1 Filed 07/11/22 Page 2 of 11 3
     shall in every case be also deemed to be the act, omission, or failure of such carrier

15   or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

16

17   10.   When considering individual liability under the TCPA, other Courts have agreed

18   that an officer or individual involved in the telemarketing at issue may be personally liable

19   under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS

20   159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can

21   be individually liable for violating the TCPA where they had direct, personal participation in

22   or personally authorized the conduct found to have violated the statute.") (cleaned up) and

23   *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual

24   acting on behalf of a corporation could avoid individual liability, the TCPA would lose

25   much of its force.").

26   11.   Defendant Hiatt personally participated in the actions complained of by

27   personally directing and authorizing the scripting and selecting of calls to be made,

28   personally voicing at least one of the pre-recorded messages, and personally paying for,

COMPLAINT- 3

1    selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded
2    calls.

3                                    **Factual Allegations**

4         12.   Hiatt was a candidate seeking election as Maricopa County Recorder.

5         13.   To promote their services Defendants also relied on the use of ATDS systems.

6         14.   To promote their services Defendants also relied on the use of prerecorded
7    messages.

8         15.   Plaintiff had no prior business relationship with the Defendants.

9         16.   Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

10        17.   Defendant Donald Hiatt is a "person" as defined by 47 U.S.C. § 153(39).

11        18.   The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

12        19.   The Cell Number has been on the Do-Not-Call registry since November 7,
13   2006.

14        20.   Despite this registration, Defendant utilized an ATDS system to call.

15        21.   The Cell Number is assigned to a cellular phone used exclusively for personal
16   residential purposes.

17        22.   Plaintiff did not consent to receive prerecorded or automated messages to his
18   Cell Number.

19        23.   Plaintiff did not consent to receive telephone calls via ATDS.

20        24.   The Cell Number is not associated with a business.

21   Calls to Plaintiff

22        25.   On or about July 29, 2024, at 4:04 pm, Plaintiff received a call presenting caller
23   ID (602)230-2636.

24        26.   Plaintiff was presented a prerecorded message that identified the speaker as
25   Donald Hiatt.

26        27.   The message solicited Plaintiff's vote for Hiatt in the upcoming election for
27   Maricopa County Recorder.

28   ///

COMPLAINT- 4

### Defendants' Use of an ATDS

28.  Hiatt called from a number not directly associated with him.

29.  Hiatt's message was prerecorded, did not address Plaintiff directly, was generic in nature, and did not stop or pause at any time for Plaintiff to respond.

30.  For these reasons, Plaintiff believes Hiatt used an ATDS to secure votes for Defendant's election.

31.  The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

32.  The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful": Id. at 879 (cleaned up).

33.  In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns": Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database: *Id.*

34.  The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

COMPLAINT- 5

35. Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

36. Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

37. No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an ATDS. Such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at 881–882.

38. Plaintiff is ignorant of the exact process by which the system(s) used by Defendants operates other than by drawing the reasonable inference and alleging that the system(s) stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

## Defendants' Conduct Was Knowing and Willing

39. Defendant intentionally called Plaintiff in order to secure Plaintiff's vote for Defendant in the upcoming election.

COMPLAINT- 6

1    40.   These calls were knowingly and intentionally made by a sophisticated individual

2    who was familiar with election laws and related regulations such as the TCPA and chose to

3    disregard them.

4    41.   Defendants knew their actions were in violation of the TCPA and willfully

5    continued their conduct calling Plaintiff multiple times despite the registration of his

6    number on the National Do-Not-Call List.

7                                    **Hiatt's Personal Liability**

8    42.   Defendant Hiatt personally participated in the calls at issue because Hiatt

9    personally directed the calls to be transmitted throughout the United States including

10   numbers with Arizona area codes of which he knew were likely to belong to individuals,

11   such as Plaintiff, who reside there.

12   43.   Hiatt and is intimately involved in all decision making and legal activities of

13   Defendant with his campaign for election.

14   44.   Defendant Hiatt has direct and personal involvement in and ultimate control

15   over every aspect of Defendant's campaign for election wrongful conduct that violated the

16   TCPA, and/or directly controlled and authorized this conduct.

17   45.   Defendant Hiatt at all times relevant to this Complaint acting alone or in concert

18   with others, formulated, directed, controlled, had the authority to control, or participated in

19   the acts and practices set forth in this Complaint,

20   46.   There is a precedent holding individuals personally liable when they participate in

21   the alleged actions: "If the officer directly participated in or authorized the statutory

22   violation, even though acting on behalf of the corporation, he may be personally liable. See

23   *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985) The "well-

24   settled" tort rule provides that "when corporate officers directly participate in or authorized

25   the commission of a wrongful act, even if the act is done on behalf of the corporation, they

26   may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir.

27   1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the

28   officer to be held personally liable must have some direct, personal participation in the tort,

COMPLAINT- 7

1    as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the

2    'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d

3    168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907

4    (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

5    Quoting *Texas v. American Blastfax*: The Court finds the above principles applicable to the

6    TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal

7    participation in or personally authorized the conduct found to have violated the statute, and

8    was not merely tangentially involved. Individuals who directly (and here, knowingly and

9    willfully) violate the TCPA should not escape liability solely because they are corporate

10   officers. As the State persuasive argues, to hold otherwise would allow the individual

11   defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their

12   conduct. Congress surely did not intend to permit such a result in passing the TCPA. To be

13   clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central

14   figures" behind the TCPA violations. They were the two persons who controlled all of

15   Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate

16   control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or

17   directly controlled and authorized this conduct. And they did so with their eyes and

18   pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason

19   to believe they were running a business that violated the TCPA. On February 9, 2001, they

20   knew they were. Yet they continued to direct their company to send unsolicited intrastate fax

21   advertisements. This is far more than a simple derivative liability case. Accordingly, the

22   Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with

23   Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." *Texas v. American Blastfax,*

24   *Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

25         47.   The Same Court held that corporate officers were also personally liable for

26   DTPA violations; The State contends Greg and Michael Horne are personally liable for any

27   DTPA damages because they were solely responsible for the violating conduct…..For the

28   same reasons discussed in finding the individual defendants personally liable under the

COMPLAINT- 8

1  TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-

2  Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA

3  misrepresentation claim, based on general rule that "a corporate agent knowingly

4  participating in a tortious of fraudulent act may be held individually liable, even though he

5  performed the act as an agent for the corporation……Accordingly, the Court finds

6  defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally

7  liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax,*

8  *Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

9      48.  Defendant Hiatt is the head of Defendant's election campaign and controls the

10  day-to-day operations and directs his employees, agents, salespersons, and solicitors to make

11  TCPA-violating phone calls.

12      49.  Defendant Hiatt is not merely a bystander. He is the mastermind that schemed,

13  planned, directed, initiated, and controlled illegal and fraudulent behavior.

14      50.  Defendant Hiatt is well aware their conduct violated the TCPA and elected to

15  proceed with illegal calls anyway. Defendant Hiatt is the only person with the power to make

16  unlawful, fraudulent, and unethical behavior stop.

17      51.  Defendant's calls harmed Plaintiff by causing the very harm that Congress

18  sought to prevent—a "nuisance and invasion of privacy.

19      **The TCPA Prohibits All Automated Calls to Protected Numbers**

20      52.  The TCPA makes it unlawful "to make any call (other than a call made for

21  emergency purposes or made with the prior express consent of the called party) using an

22  automated telephone dialing system or an artificial or prerecorded voice … to any

23  telephone number assigned to a … paging service, cellular telephone service, specialized

24  mobile radio service, or other radio common carrier service, or any service for which the

25  party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

26      53.  Congress singled out these services for special protection because Congress

27  realized their special importance in terms of consumer privacy (as is the case with cellular

28

COMPLAINT- 9

1   phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J.

2   & Thomas, concurring in part and dissenting in part).

3       54.   According to findings by the Federal Communications Commission ("FCC"),

4   which is the agency Congress vested with the authority to issue regulations implementing

5   the TCPA, such messages are prohibited because, as Congress found, automated or

6   prerecorded messages are a greater nuisance and invasion of privacy than live ones, are

7   costly, and are inconvenient.

8       55.   The TCPA provides a private cause of action to persons who receive calls in

9   violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

10      56.   These causes of action apply to users of any of four protected services (pager,

11  cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or

12  another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service,

13  including residential, VoIP, and landline services, for which the called party is charged:

14  *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

15      57.   "Non-Emergency pre-recorded voice or autodialed calls to the destinations

16  enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent

17  of the called party."

18      58.   U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone

19  solicitation to … [a] residential telephone subscriber who has registered his or her

20  telephone number on the National Do-Not-Call Registry of persons who do not wish to

21  receive telephone solicitations that is maintained by the Federal Government" and defines

22  "telephone solicitation" as "the initiation of a telephone call or message for the purpose of

23  encouraging the purchase or rental of, or investment in, property, goods, or services, which

24  is transmitted to any person…": U.S.C. § 227(f)(15).

25      59.   The FCC also recognized that "wireless customers are charged for incoming

26  calls whether they pay in advance or after the minutes are used": In re Rules and

27  Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278,

28  Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

60. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

61. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

62. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … [e]xcept as provided … initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

63. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing] to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described… "

64. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

65. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

66.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

67.   47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

68.   Plaintiff incorporates the foregoing allegations as fully set forth herein.

69.   The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227, by sending calls utilizing an automated or prerecorded voice.

70.   As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling

1   him to recover $500 in civil fines for each violation and an injunction requiring Defendants

2   to stop his illegal calling campaign.

3        71.   Plaintiff is also entitled to and does seek injunctive relief prohibiting

4   Defendants and/or his affiliates, agents, and/or other persons or entities acting on

5   Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending

6   messages, except for emergency purposes, to any number using an artificial or prerecorded

7   voice in the future.

8        72.   Plaintiff is entitled to an award up to $1500 in damages for each knowing and

9   willful violations of 47 U.S.C. § 227(b)(3)(B)

10       73.   Defendants' violations were willful and/or knowing.

12                              **Relief Sought**

13   WHEREFORE, Plaintiff requests the following relief:

14   A. Injunctive relief prohibiting Defendants from calling telephone numbers using an

15   artificial or prerecorded voice and/or ATDS.

16   B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500

17   in damages for each violation or—where such regulations were willfully or knowingly

18   violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

19   C. Such other relief as the Court deems just and proper.

22   RESPECTFULLY SUBMITTED on this August 18, 2024.

24   _____

    Jason Crews

COMPLAINT- 13